UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| **ROBERT C. TAYLOR,** | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 18-cv-00035 (APM) |
| **FEDERAL AVIATION ADMINISTRATION, et al.,** | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

Plaintiff Robert Taylor is a model aircraft enthusiast who owns multiple model planes and flies them as a hobby and for recreational purposes. He brings this action on behalf of himself and a putative class of all model aircraft owners who paid $5 to register their aircraft with the Federal Aviation Administration (FAA) under a rule later struck down by the D.C. Circuit. Plaintiff claims that the registration requirement violated the Privacy Act and the Little Tucker Act. He also advances against the FAA a violation of his constitutional right of privacy, as well as the common law tort of unjust enrichment. Plaintiff demands that the agency return the more than $4 million it collected in registration fees and pay over $836 million in statutory penalties.

Defendant FAA now moves to dismiss, arguing that (1) Plaintiff lacks standing to sue, (2) the D.C. Circuit has exclusive jurisdiction over this matter, and (3) the Complaint fails to state a claim upon which relief can be granted. For the reasons stated herein, the court holds that, as presently pleaded, Plaintiff lacks standing to bring this action. Defendant's Motion to Dismiss is therefore granted.

## II. BACKGROUND

### A. Factual Background

The Federal Aviation Administration (FAA) is tasked with "promot[ing] safe flight of civil aircraft in air commerce[.]" 49 U.S.C. § 44701. Invoking this authority, on December 16, 2015, the FAA issued an interim final rule (the "Registration Rule"), requiring owners of small unmanned aircraft, including model aircraft, to register their aircraft with the FAA "to facilitate compliance with the statutory requirement that all aircraft register prior to operation." 80 Fed. Reg. at 78,594 (Registration Rule); *see also* Pl.'s Compl. and Demand for Jury Trial, ECF No. 1 [hereinafter Compl.], ¶ 7; Def.'s Mot. to Dismiss, ECF No. 23 [hereinafter Def.'s Mot.], at 4. The Registration Rule required a registrant to supply her name, address, and email address. *See* 14 C.F.R. § 48.100(b). The registration was good for three years, *id.* §48.11(c), and the fee to register was $5, *id.* § 48.30(b).

On May 19, 2017, the D.C. Circuit struck down the Registration Rule insofar as it mandated registration of model aircraft. *Taylor v. Huerta*, 856 F.3d 1089 (D.C. Cir. 2017). The Circuit's decision rested on Section 336(c) of the FAA Modernization and Reform Act, Pub. L. No. 112-95, 126 Stat. 11 (2012), which provides that the FAA "may not promulgate any rule or regulation regarding a model aircraft" flown for recreational use and meeting certain additional criteria, *see Taylor*, 856 F.3d at 1092–93. The Circuit succinctly explained why the Registration Rule as applied to model aircraft could not stand:

> In short, the 2012 FAA Modernization and Reform Act provides that the FAA "may not promulgate any rule or regulation regarding a model aircraft," yet the FAA's 2015 Registration Rule is a "rule or regulation regarding a model aircraft." Statutory interpretation does not get much simpler. The Registration Rule is unlawful as applied to model aircraft.

2

*Id.* at 1092. The Circuit rejected the FAA's various arguments attempting to justify its exercise of regulatory authority over model aircraft. *See id.* at 1092–93.

Following the D.C. Circuit's decision, the FAA ceased enforcing the Registration Rule and took steps to enable model aircraft owners to undo their registrations. Compl. ¶ 16; Def.'s Mot. at 5–6. The FAA made available on its website a form, titled "Section 336 Aircraft Owner Request to Delete Registration/Receive Refund," which allowed registrants to seek a refund and ask that their personal information be deleted. Compl. ¶ 16; Def.'s Mot. at 5–6; Def.'s Mot., Ex. 1, ECF No. 23-2, Section 336 Aircraft Owner Request to Delete Registration/Receive Refund [hereinafter "Refund Form"]. The Refund Form required owners to certify that they operated their model aircraft in compliance with various statutory requirements and, if they sought a refund, to supply bank account information. Compl. ¶ 16. Plaintiff did not submit a Refund Form.

The relief afforded model aircraft owners under *Taylor* was short lived. On December 12, 2017, the President signed into law the National Defense Authorization Act for Fiscal Year 2018, ("NDAA"), which revived the Registration Rule. Section 1092(d) of the NDAA provides:

> The rules adopted by the Administrator of the Federal Aviation Administration in the matter of registration and marking requirements for small unmanned aircraft (FAA-2015-7396; published on December 16, 2015) that were vacated by the United States Court of Appeals for the District of Columbia Circuit in Taylor v. Huerta (No. 15-1495; decided on May 19, 2017) shall be restored to effect on the date of enactment of this Act.

Pub. L. No. 115-91, 131 Stat. 1283 (2017). Thus, the NDAA granted the FAA the statutory authority to require registration of model aircraft that the D.C. Circuit in *Taylor* held the FAA did not possess.

With the Registration Rule reinstated, the FAA provided guidance to model aircraft owners. As to owners who had registered their aircraft prior to *Taylor*, the FAA did not require

them to re-register, unless the owner had completed the refund/deletion process offered by the agency. Def.'s Mot. at 6–7.[1] Additionally, the FAA made all pre-*Taylor* registrations effective until December 12, 2020, thus treating those registrations as if having occurred on the date of the NDAA's enactment. *Id*. at 7.

B.  **Procedural Background**

Plaintiff brought the instant suit as a class action on January 5, 2018. *See generally* Compl.[2] The crux of his Complaint is that the FAA lacked the statutory power to demand and retain his personal information and the $5 registration fee until Congress passed the NDAA on December 12, 2017. Compl. ¶¶ 15,18,19. This unlawful exercise of authority, Plaintiff maintains, violated the Privacy Act (Count I), the Little Tucker Act (Count II), and his "Constitutional and privacy rights" (Count III). He also alleges that the agency was unjustly enriched by the unauthorized fees collection (Count IV). Plaintiff seeks declaratory relief, a refund of the registration fees collected before December 12, 2017 (totaling $4,183,980), and over $836,796,000 in statutory penalties for each violation of the Privacy Act (the equivalent to $1,000 for every putative class member). *Compl.* at 15–16 ¶¶ C – L.

Defendant then moved to dismiss, arguing (1) Plaintiff does not have standing to assert his claims, (2) the D.C. Circuit has exclusive jurisdiction over this action, and (3) the Complaint fails to state a legally cognizable cause of action. *See generally* Def.'s Mot.[3] Because the court finds that Plaintiff lacks standing, it does not reach the second and third arguments.

---

[1] Citing FAA, Unmanned Aircraft Systems Frequently Asked Questions, https://www.faa.gov/uas/faqs/.

[2] Plaintiff first brought the claims raised here on August 3, 2017, in a separate action commenced in the District of Maryland. Def.'s Mot. at 7–8. However, Plaintiff voluntarily dismissed that action after passage of the NDAA. *Id.*

[3] Plaintiff moved to certify the class, *see* ECF No. 6, but the court stayed the question of class certification until it resolved Defendant's Motion to Dismiss, *see* Minute Order granting Motion to Hold in Abeyance, ECF No. 12.

## III. LEGAL STANDARD

A motion to dismiss for lack of standing arises under Federal Rule of Civil Procedure 12(b)(1). *See Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015).

Every plaintiff in federal court bears the burden of showing that she meets the "irreducible constitutional minimum" of Article III standing: (1) injury in fact, (2) causation, and (3) redressability. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). At the motion to dismiss stage, a plaintiff "must state a plausible claim that [she has] suffered an injury in fact fairly traceable to the actions of the defendant that is likely to be redressed by a favorable decision on the merits." *Food & Water Watch*, 808 F.3d at 913 (quoting *Humane Soc'y of the U.S. v. Vilsack*, 797 F.3d 4, 8 (D.C. Cir. 2015)). The court must accept as true all well-pleaded factual contentions and draw all reasonable inferences therefrom, but it need not accept thread-bare recitals of the elements of standing or legal conclusions couched as factual averments. *See Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). In deciding a Rule 12(b)(1) motion, the court "may consider materials outside the pleadings[.]" *Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (citation and alteration omitted).

## IV. DISCUSSION

With these standards in mind, the court proceeds to consider whether Plaintiff has carried his burden of establishing standing. He has not. Plaintiff satisfies neither the injury-in-fact nor redressability elements of standing.

### A. Injury in Fact

To satisfy the injury-in-fact requirement, plaintiff must show that his alleged injury was both concrete and particularized. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U. S. 167, 180 (2000). Further, an injury in fact must be "actual or imminent, not conjectural

or hypothetical." *Lujan*, 504 U.S. at 560. And, as here, in the class-action context, named plaintiffs "must allege and show that they *personally* have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Warth v. Seldin*, 422 U.S. 490, 502 (1975) (emphasis added).

Plaintiff is quite clear as to what he believes constitutes a cognizable injury in fact in this case. He asserts two forms of injury. First, "he lost the use of funds during the period in which the FAA lacked statutory authority to collect such registration fees" and "had not been compensated for the lost use of funds at the time he filed suit." Pl.'s Opp'n to Def.'s Mot., ECF No. 24 [hereinafter Pl.'s Opp'n], at 8; *see also* Compl. ¶ 37 (alleging that he was "deprived . . . of the use of those funds"). Second, he suffered the "intangible harm of Defendants' unlawful maintenance of his personal information." Pl.'s Opp'n at 9. The court considers each of these claimed injuries in turn.

### 1. Interest and the Time Value of Money

The "time value of money" is the notion that money available today is worth more than the same amount of money in the future. *See, e.g., Stephens v. U.S. Airways Grp., Inc.*, 644 F.3d 437, 442 (D.C. Cir. 2011) (Kavanaugh, J., concurring). That principle is premised on the idea that money can earn interest over time or be put to some other income-generating use, if invested. *See id.*

Neither the Supreme Court nor the D.C. Circuit has determined whether the lost time value of money is a harm concrete enough to satisfy the injury-in-fact requirement. Indeed, only one circuit court appears to have even come close to embracing such a theory, and there the alleged lost use was for a sum of money ($10,000) far greater than at issue here. *See Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 457 (7th Cir. 2010) (stating that "[e]very day that a sum of

6

money is wrongfully withheld, its rightful owner loses the time value of the money," creating a harm sufficient for standing). The only other circuit to have faced the question declined to reach it. *See Kawa Orthodontics, LLP v. Sec., U.S. Dep't. of Treasury*, 773 F.3d 243, 246 (11th Cir. 2014). And some district courts have rejected the notion that lost time value of money is constitutionally sufficient to satisfy standing when the amount wrongfully taken or withheld was discharged before filing suit—a circumstance comparable to this case, as Plaintiff now must pay the $5 fee to register his model aircraft. *E.g., Amirhamzeh v. Chase Bank USA, N.A.*, No. CV 13-00527 BRO FFMX, 2013 WL 7219270, at *4 (C.D. Cal. Oct. 7, 2013); *Holaway v. Protective Life Ins. Co.*, No. 4:07-CV-109 (CDL), 2007 WL 2904162, at *2 (M.D. Ga. Oct. 3, 2007). Thus, accepting the lost time value of money as a cognizable constitutional injury is far from well established.

The court need not, however, venture down this rabbit hole. For even if the lost time value of money could suffice to make out an Article III injury, the "bare allegation that [a plaintiff] has lost the value of the time and resources . . . sets out an injury that is too abstract and indefinite to confer Article III standing." *Kawa Orthodontics*, 773 F.3d at 246 (cleaned up). Here, Plaintiff does not allege *any* facts to suggest that if he had not paid the $5 registration fee he would have invested the $5 in some way to increase its value. *See generally* Compl. At most, he offers only generalizations that he was "deprived . . . of [the] use of those funds" and is entitled "to be compensated for his lost use of funds." Compl. ¶ 37; Pl.'s Opp'n. at 9. Such conclusory proclamations are not the kind of clear allegations of fact necessary to establish an injury in fact, even at the motion to dismiss stage. *See Spokeo, Inc. v. Robins*, 578 U.S. \_\_, \_\_, 136 S. Ct. 1540, 1547 (2016). Other courts have reached the same conclusion. *See Kawa Orthodontics*, 773 F.3d at 246 (finding that where plaintiff did not mention interest or suggest "specific plans to invest its

7

money into an interest-bearing asset," the court could not "hypothesize or speculate about the existence of an injury [plaintiff] did not assert"); *Barber v. Lincoln Nat'l Life Ins. Co.*, 260 F. Supp. 3d 855, 862 (W.D. Ky. 2017) ("The complaint makes no particularized allegation that [plaintiff] lost the time value of money . . . It may be implied by the nature of [plaintiff's] allegations that . . . he lost the opportunity to grow that money through investment. But the Court cannot find injury via implication[.]").

Therefore, as pleaded, Plaintiff does not allege a sufficient injury in fact to support standing based on the lost time value of money.[4]

### 2. *Unlawful Maintenance of Personal Information*

Plaintiff's contention that the FAA's unlawful acquisition and maintenance of his personal information constitutes a cognizable injury suffers from similar problems. Presumably, this asserted injury arises from the FAA's alleged violation of the Privacy Act. *See* Compl. ¶¶ 33–34, 37. In *Doe v. Chao*, the Supreme Court explained that the Privacy Act's reference to "adverse effect" in 5 U.S.C. § 552a(g)(1)(D)—the statutory section under which Plaintiff asserts his Privacy Act claim, *see* Compl. ¶ 36—"acts as a term of art identifying a potential plaintiff who satisfies the injury-in-fact and causation requirements of Article III standing, and who may consequently bring a civil action without suffering dismissal for want of standing to sue." *Doe v. Chao*, 540 U.S. 614, 624 (2004). The Court in *Doe* did not supply a definition of "adverse effect," and this court has not found a decision from the D.C. Circuit, or any other circuit, that does so. Whatever

---

[4] The court recognizes that the D.C. Circuit has said that a "dollar of economic harm is still an injury-in-fact for standing purposes." *Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 5 (D.C. Cir. 2017). But how about less than a dollar? The court need not resolve that question. Nevertheless, by the court's rough calculations, using the current approximate benchmark interest rate of 2.25%, an investment of $5 over two years' time (assuming Plaintiff paid his registration fee on the very day the FAA adopted the Registration Rule) would yield 23 cents in lost interest. Is that enough harm to establish Article III standing? Some courts have said unpaid interest in similar circumstances is not enough to confer standing. *See Friedman v. Dollar Thrifty Auto. Grp., Inc.*, 227 F. Supp. 3d 1192, 1203 (D. Colo. 2017) (holding that a person made whole as to the amount allegedly wrongfully withheld and whose only claimed injury is "he was not paid interest on the amount" lacks sufficient injury to establish standing) (citing cases).

the term may include, it cannot sweep so broadly as to encompass Plaintiff's claimed injury—the mere improper maintenance of Plaintiff's name, address, and email address by the FAA. Indeed, one circuit court has rejected more meaningful claimed injuries as failing to satisfy the "adverse effect" standard. *See, e.g., Beck v. McDonald*, 848 F.3d 262, 272 (4th Cir. 2017) (rejecting "emotional upset" and "fear [of] identity theft and financial fraud" resulting from a data breach as sufficient to confer Article III standing for a Privacy Act violation). *Cf. In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 28–29 (D.D.C. 2014) (finding no injury, awarding no statutory damages, and dismissing under Rule 12(b)(1) a Privacy Act violation claim for a data breach resulting from the theft of tapes containing the data of 4.7 million members of the U.S. military and their families where plaintiffs alleged no harm other than the theft of their data); *Speaker v. U.S. Dep't of Health & Human Servs. Centers for Disease Control & Prevention*, 623 F.3d 1371, 1382 (11th Cir. 2010) (finding standing where the plaintiff alleged such harms as strain on his marital relationship, public criticism, death threats, and damage to reputation because of unauthorized disclosure of medical information). Thus, the wrongful possession of Plaintiff's personal information, without more, does not establish an injury in fact.

Plaintiff's claimed injury arising from the FAA's keeping of his personal information also runs aground on Circuit precedent. Recently, the D.C. Circuit held in *Owner-Operator Independent Drivers Ass'n, Inc. v. U.S. Department of Transportation*, that the mere existence of inaccurate information about truckers' driving records in an agency database does not amount to a sufficiently concrete injury to confer standing, even where the agency had a statutory obligation to keep accurate records. *See* 879 F.3d 339, 341, 344–45 (D.C. Cir. 2018); *cf. id.* (holding that the disclosure of inaccurate information to a potential employer was a sufficient injury). If the mere maintenance of *inaccurate* information is not sufficient to confer standing, surely an agency's

9

retention of prosaic personal information is not either. Plaintiff therefore lacks standing to assert his claim under the Privacy Act.

### B. Redressability

"The redressability inquiry," to which the court now turns, "poses a simple question: 'If plaintiffs secured the relief they sought, . . . would [it] redress their injury'?" *The Wilderness Soc'y v. Norton*, 434 F.3d 584, 590 (D.C. Cir. 2006) (quoting *Mountain States Legal Found. v. Glickman*, 92 F.3d 1228, 1233 (D.C. Cir. 1996)). To demonstrate that a claimed injury is redressable requires a plaintiff to show that the court possesses the authority to grant the remedy requested. *See Swan v. Clinton*, 100 F.3d 973, 976 (D.C. Cir. 1996) (stating that the "'redressability' element of standing" asks "whether a federal court has the power to grant [the plaintiff's requested] relief"); *accord M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018) (stating that "even where a plaintiff requests relief that would redress her claimed injury, there is no redressability if a federal court lacks the power to issue such relief"). Here, Plaintiff asserts that the court can redress his claimed injuries by (1) refunding his $5 registration fee, (2) compensating him for the lost use of the $5 fee, and (3) awarding him statutory damages under the Privacy Act "as a result of the FAA's unlawful, intentional, and willful conduct." Pl.'s Opp'n at 9. The court lacks the power to grant these forms of relief.

The court cannot award Plaintiff a $5 refund, or some lesser amount, to compensate him for the lost time value of money. As the FAA correctly points out, making Plaintiff whole for the lost use of $5 over a two-year period would be tantamount to an award of interest. *See Holland v. Bibeau Const. Co.*, 774 F.3d 8, 17 (D.C. Cir. 2014) ("Interest merely equalizes the time value of money, making the same amount similarly valuable when paid at different times."); *Motion Picture Ass'n of Am., Inc. v. Oman*, 969 F.2d 1154, 1157 (D.C. Cir. 1992) (observing that "interest

compensates for the time value of money"). But, absent an express waiver of sovereign immunity, an award of interest cannot be recovered against the United States. *See Library of Congress v. Shaw*, 478 U.S. 310, 311 (1986) (holding that "interest cannot be recovered in a suit against the Government in the absence of an express waiver of sovereign immunity from an award of interest"); *accord Thompson v. Kennickell*, 797 F.2d 1015, 1020 (D.C. Cir. 1986) ("Absent a clearly manifested congressional decision to waive the traditional 'no-interest rule' in government suits, we cannot award . . . interest in this case."). Neither the Privacy Act nor the Little Tucker Act—the only statutory claims advanced by Plaintiff—provide such a waiver. Moreover, Plaintiff cannot avoid the bar of the "no-interest" rule by recharacterizing his claimed injury as compensatory "damages." "[T]he character or nature of 'interest' cannot be changed by calling it 'damages,' 'loss,' 'earned increment,' 'just compensation,' 'discount,' 'offset,' or 'penalty,' or any other term, because it is still interest and the no-interest rule applies to it." *Shaw*, 478 U.S. at 321 (quoting *United States v. Mescalero Apache Tribe*, 518 F.2d 1309, 1322 (Ct. Cl. 1975)). Plaintiff's claim for the lost use of the $5 fee is a demand for interest. Therefore, the court lacks the power to redress Plaintiff's asserted injury of the lost time value of money.

The court likewise lacks the power to redress Plaintiff's purported harm arising out of the FAA's unauthorized retention of his personal information. As discussed, Plaintiff does not allege that he suffered any actual harm stemming from the FAA's collection of his information. Instead, what he appears to assert is that the agency's *mere violation* of the Privacy Act entitles him to a statutory award of at least $1,000 plus attorney's fees and costs. *See* Compl. ¶ 40 (citing 5 U.S.C. § 522a(g)(4)). The Supreme Court, however, squarely foreclosed that possibility in *Doe v. Chao*. There, the Court held that "[t]he 'entitle[ment] to recovery' necessary to qualify for the $1,000 minimum is not shown merely by an intentional or willful violation of the Act producing some

adverse effect. The statute guarantees $1,000 only to plaintiffs who have suffered some actual damages." 540 U.S. at 627. Later, in *FAA v. Cooper*, the Court clarified that the term "actual damages" as used in the Privacy Act refers only to "proven pecuniary or economic harm." 566 U.S. 284, 299 (2012).

Here, Plaintiff's Complaint contains no factual basis from which the court can plausibly infer that it would have the power to award him the minimum $1,000 statutory award to redress his claimed injury. Having made no allegation whatsoever of pecuniary or economic harm caused by the alleged Privacy Act violation, the court is foreclosed from granting the $1,000 statutory award he seeks.

### C. Causation

A brief word about causation before concluding. As to that element, a plaintiff must allege an injury that is "fairly traceable to the defendant's allegedly unlawful conduct." *Lujan*, 504 U.S. at 590. He cannot, however, "manufacture standing merely by inflicting harm on [himself] . . ." *Clapper v. Amnesty Int'l. USA*, 568 U.S. 398, 416 (2013); *accord Nat'l Family Planning and Reproductive Health Ass'n, Inc. v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006) ("We have consistently held that self-inflicted harm doesn't satisfy the basic requirements for standing.").

Here, to some degree, Plaintiff has brought harm upon himself. He did not avail himself of the opportunity that the FAA afforded registrants post-*Taylor* to request both a refund and removal of his personal information from the agency's database. Had he done so, Plaintiff would have achieved much of what he now seeks, at least on his own behalf, through this lawsuit. The return of the $5 application fee when the FAA offered it would have reduced the lost time value of money, and the deletion of his personal information would have ended the agency's possession

of it.  There would have been little to remedy at the time he filed suit.  Thus, the injury he now claims feels manufactured.

In any event, the court forgoes making any finding as to causation, because the FAA has not argued that the element is lacking and the absence of the remaining two elements is sufficient to conclude Plaintiff does not have standing.

## V. CONCLUSION AND ORDER

For the foregoing reasons, Defendant's Motion to Dismiss is hereby granted.  Unless Plaintiff seeks to amend his Complaint within 14 days, the court will enter a final, appealable order.

Dated:  November 26, 2018

Amit P. Mehta
United States District Judge