# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| **ROBERT C. TAYLOR,** ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> **FEDERAL AVIATION** ) <br> **ADMINISTRATION, et al.,** ) <br> ) <br> **Defendants.** ) <br> ) | Case No. 18-cv-00035 (APM) |

## MEMORANDUM OPINION

### I. INTRODUCTION

Plaintiff Robert Taylor is a model aircraft enthusiast who owns multiple model planes that he uses for hobby and recreational purposes. He seeks damages on behalf of himself and all model aircraft owners who paid $5.00 to register their aircraft with Defendant Federal Aviation Administration under a rule later struck down by the D.C. Circuit and then reinstated by statute. Plaintiff demands that the agency return more than $4 million in registration fees and pay more than $836 million in statutory penalties. This court previously found Plaintiff lacked standing to sue but allowed him to amend his complaint to cure this defect. The court now dismisses Plaintiff's Amended Complaint for the same reason, and for the additional reason that Plaintiff has failed to state a claim. Defendants' second Motion to Dismiss is therefore granted.

### II. BACKGROUND

The court detailed the factual and procedural background of this case in its previous decision, and it need not repeat that discussion at length here. *See Taylor v. FAA ("Taylor")*, 351 F. Supp. 3d 97 (D.D.C. 2018). To summarize, Plaintiff brings this action on behalf of himself and

a putative class of all model aircraft owners who, pursuant to a Federal Aviation Administration ("FAA") rule, paid $5.00 to register their aircraft with the agency. For ease of reference, the court refers to this requirement as the "Registration Rule." The D.C. Circuit held that the FAA lacked the statutory authority to adopt the Registration Rule and compel model aircraft owners to register their aircraft. *See Taylor v. Huerta ("Huerta")*, 856 F.3d 1089 (D.C. Cir. 2017). Congress later passed legislation reinstating the Registration Rule. *See Taylor*, 351 F. Supp. 3d at 100.

In his original complaint, Plaintiff claimed that, by adopting the Registration Rule without statutory authority, the FAA violated the Privacy Act (Count I) and the Little Tucker Act (Count II). He also claimed that the FAA's obtaining his personal information violated his constitutional right of privacy (Count III), and its collecting a $5.00 fee unjustly enriched the agency (Count IV). *See Taylor*, 351 F. Supp. 3d at 99. The court dismissed Plaintiff's original complaint, holding that Plaintiff lacked standing to sue. *Id.* at 99. The court gave Plaintiff the opportunity to amend, *see id*. at 106, and Plaintiff did so, alleging the same four claims, plus an additional claim for declaratory relief, *see* Pl.'s Am. Compl. and Demand for Jury Trial, ECF No. 31 [hereinafter Am. Compl.].

Defendants have once more moved to dismiss, arguing that Plaintiff still lacks standing despite adding new allegations. Defendants also renew their arguments that the D.C. Circuit has exclusive jurisdiction over some of the claims, and that Plaintiff fails to state a claim upon which relief can be granted. Defs.' Mot. to Dismiss Am. Compl., ECF No. 36, Mem. in Supp. of Defs.' Mot., ECF No. 36-1 [hereinafter Defs.' Mem.], at 2.

## III. DISCUSSION

### A. Standing

A plaintiff in federal court must show that he meets the "irreducible constitutional minimum" of Article III standing: (1) injury in fact, (2) causation, and (3) redressability. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). At the motion to dismiss stage, a plaintiff "must state a plausible claim that [she has] suffered an injury in fact fairly traceable to the actions of the defendant that is likely to be redressed by a favorable decision on the merits." *Food & Water Watch Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015) (quoting *Humane Soc'y of the U.S. v. Vilsack*, 797 F.3d 4, 8 (D.C. Cir. 2015)). The court must accept as true all well-pleaded factual contentions and draw all reasonable inferences therefrom, but it need not accept threadbare recitals of the elements of standing or legal conclusions couched as factual averments. *See Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015).

#### 1. *Injury in Fact*

The court begins with injury in fact. To satisfy this requirement, plaintiff must show that his alleged injury was both "concrete and particularized," as well as "actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000); *see also Lujan*, 504 U.S. at 560 (same). In the class-action context, named plaintiffs "must allege and show that they *personally* have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Warth v. Seldin*, 422 U.S. 490, 502 (1975) (emphasis added).

In his original Complaint, Plaintiff specified two forms of injury in fact: (1) the lost opportunity to use the $5.00 registration fee during the period that the FAA lacked the authority to collect such fees; and (2) the "intangible harm" of the FAA's wrongful maintenance of his personal

information. *See Taylor*, 351 F. Supp. 3d at 102. In his Amended Complaint, Plaintiff persists in his allegation that he suffered injury in fact from the lost "time value and opportunity value" of the $5.00 registration fee, as well as the loss of the $5.00 itself. *See* Am. Comp. ¶¶ 41–42. He has also modified his claimed injury arising from the FAA's alleged Privacy Act violation. Where Plaintiff previously insisted that he suffered the "intangible harm of Defendants' unlawful maintenance of his personal information," *Taylor*, 351 F. Supp. 3d at 102, he now argues that, "as a result of the FAA's Privacy Act violation . . . Plaintiff suffered *pecuniary harm* when the FAA unlawfully deprived him of the $5.00 registration fee," a loss that "encompasses the fee itself in addition to the use and value of the registration fee, including the opportunity to invest the funds to increase their value," *See* Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss, ECF No. 38 [hereinafter Pl.'s Opp'n.], at 10 (emphasis added). Plaintiff's theory of injury under the Privacy Act—his primary cause of action—thus has shifted from "intangible harm," *see Taylor*, 351 F. Supp. 3d at 102, to "pecuniary harm," *see* Am. Compl. ¶¶ 40–41. Plaintiff's recasted "pecuniary harm" does not satisfy the injury-in-fact requirement.

      a.      <u>The $5.00 registration fee</u>

Ordinarily, the loss of even a small amount of money would satisfy the injury-in-fact requirement. *See Czyzewski v. Jevic Holding Corp.*, 580 U.S. ___, ___, 137 S. Ct. 973, 983 (2017) ("For standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'"); *Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 5 (D.C. Cir. 2017) ("A dollar of economic harm is still an injury-in-fact for standing purposes."). But not so for this plaintiff. That is because "standing is assessed as of the time a suit commences," *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 324 (D.C. Cir. 2009), and at the time he filed this action, Plaintiff had suffered no harm from his payment of the $5.00 registration fee.

4

On December 12, 2017, Congress "restored to effect" the Registration Rule that the D.C. Circuit vacated in *Taylor v. Huerta*. Am. Compl. ¶ 18. That included payment of the $5.00 registration fee. *See* 14 C.F.R. § 48.30. After Congress acted, the FAA advised model aircraft owners that, "[i]f you are a model aircraft owner who registered prior to December 12, 2017 and did not request to have your registration information deleted, the FAA has extended the expiration date until December 12, 2020, which is 3 years from the rule restoration date."[1] In other words, the FAA renewed all already-registered model aircraft for a three-year period starting from the date of the Registration Rule's restoration. Thus, by the time Plaintiff commenced this action in January 2018, he had received what he had paid for: a lawful registration of a model aircraft with the FAA. The paid $5.00 registration fee therefore did not constitute an injury in fact at the time he initiated this action.

To fend off this conclusion, Plaintiff alleges he is "not currently automatically required to register Model Aircraft or pay a registration fee," and that he "may also have opted to not re-register and pay the fee." Am. Compl. ¶¶ 21, 42. The first contention is a legal conclusion, and the court does not assume the truth of such allegations. *See Arpaio*, 797 F.3d at 19. The second contention is not a fact assertion at all. Plaintiff simply states that he "may" have opted not to re-register his aircraft. Am. Compl. ¶ 42. Such an assertion hardly qualifies as a well-pleaded factual allegation.

Plaintiff also states in his opposition that he "is not obligated to register Model Aircraft because he has not, nor has he alleged, to have operated Model Aircraft after" Congress reinstated the Registration Rule. Pl.'s Opp'n at 37. But that assertion nowhere appears in Plaintiff's

---

[1] *See* FAA, Frequently Asked Questions, *If I am a model aircraft owner who registered prior to December 12, 2017, on what date do I have to renew my registration?*, (Dec. 13, 2018), https://faa.custhelp.com/app/answers/detail/a_id/772/kw/Registration%20Questions/session/L3RpbWUvMTU2NTAyMTAxNC9zaWQvemlIbWt5bG8%3D.

5

Amended Complaint. Plaintiff, of course, cannot amend his pleading through an opposition to a motion to dismiss. *See Middlebrooks v. Godwin Corp.*, 722 F. Supp. 2d 82, 87 n.4 (D.D.C. 2010). In any event, as discussed below, Plaintiff cannot manufacture injury, and thereby establish standing, by purposely refraining from operating model aircraft, while making no effort to recoup his registration fee.

b. <u>Lost time value of the $5.00 registration fee</u>

That then leaves the lost time value of $5.00 as the only possible cognizable injury.[2] The court previously held that Plaintiff did not suffer an injury in fact by the temporary loss of the registration fee, because he had "not allege[d] *any* facts to suggest that if he had not paid the $5.00 registration fee he would have invested the $5.00 in some way to increase its value." *Taylor*, 351 F. Supp. 3d at 103. Plaintiff tries to cure this pleading deficiency by alleging that he "*could have* invested the $5.00, retained the funds, or used the funds for a different purpose." Am. Compl. ¶ 42 (emphasis added). This addition does nothing to remedy Plaintiff's insufficient pleading of injury in fact. An injury must be concrete, not hypothetical. *See Lujan*, 504 U.S. at 560. Plaintiff still alleges no facts to support the contention that he *would have* invested the $5.00 fee had he not paid it to the FAA at a time it lacked the statutory authority to register model aircraft. The mere lost use of a registration fee at first improperly collected but then validly reinstated, without more, is not sufficiently concrete to constitute a cognizable injury in fact. *See Kawa Orthodontics, LLP v. Sec., U.S. Dep't. of Treasury*, 773 F.3d 243, 246 (11th Cir. 2014) (The "bare allegation that [a plaintiff] has lost the value of the time and resources . . . sets out an injury that is too abstract and

---

[2] In his papers, Plaintiff does not assert a loss of privacy as an injury in fact, even though he alleges that the FAA's unlawful collection of personal information violated his "privacy rights guaranteed by the Constitution." Am. Compl. ¶ 55. The court therefore is under no obligation to consider such a theory of injury, and declines to do so. *See Gov't of Manitoba v. Bernhardt*, 923 F.3d 173, 179 (D.C. Cir. 2019) (refusing to consider theory of standing identified in complaint but not developed on the record).

indefinite to confer Article III standing.") (internal quotation marks omitted); *Barber v. Lincoln Nat'l Life Ins. Co.*, 260 F. Supp. 3d 855, 862 (W.D. Ky. 2017) ("The complaint makes no particularized allegation that [plaintiff] lost the time value of money . . . [T]he Court cannot find injury via implication.").

The court recognizes that the D.C. Circuit spoke recently on the lost time value of money. In a case involving the massive data breach at the Office of Personnel Management ("OPM"), the court held that plaintiffs who claimed a delay in receiving federal and state tax refunds due to fraudulently filed returns using the plaintiffs' personal information had stated "an actual, tangible pecuniary injury" under the Privacy Act, both for the delayed receipt of the refund and "the forgone time value of that money." *See In re OPM Data Sec. Breach Litig. ("OPM Breach Litig.")*, 928 F.3d 42, 66 (D.C. Cir. 2019). This case is not like the OPM case, however. There, the plaintiffs were statutorily entitled to interest on late-paid federal tax refunds. *See id.* Congress thus recognized the pecuniary harm arising from late-payment of tax refunds. *Cf. Spokeo, Inc. v. Robins*, 578 U.S. ___, ___, 136 S. Ct. 1540, 1549 (2016) ("In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles."). The same cannot be said here. On the contrary, when Congress restored the Registration Rule, it included no accommodation or relief for model aircraft owners who had paid the registration fee during the period when the FAA lacked authority to compel registration. Thus, when Congress does not, as here, recognize a pecuniary injury associated with the lost time value of money, it is incumbent on the plaintiff to plead how the lost use of money resulted in actual harm. Plaintiff fails to do so here.

## 2. Causation

As to the element of causation, the court previously observed that, "to some degree, Plaintiff has brought harm upon himself" because he did not seek a refund of the $5.00 fee that the FAA offered after the D.C. Circuit struck down the Registration Rule. *Taylor*, 351 F. Supp. 3d at 106. The court refrained from making a finding as to causation, however, because Defendants had not "argued that the element is lacking . . . ." *Id.* Defendants now advance that argument. *See* Def.'s Mem. at 8.

The D.C. Circuit has "consistently held that self-inflicted harm doesn't satisfy the basic requirements for standing" because "it would not be fairly traceable to the defendant's challenged conduct." *Nat'l Family Planning & Reprod. Health Ass'n, Inc. v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006) (citing cases). Where a plaintiff has an "easy means" to remedy a claimed injury, but fails to take advantage of it, such injury "would not be fairly traceable to the defendant's challenged conduct." *Id.* Here, after the D.C. Circuit's ruling, the FAA afforded registrants an opportunity to request a refund and to have their information removed from the agency's database. Am. Compl. ¶ 16. Plaintiff declined the opportunity. Because he has "*chosen* to remain in the lurch" with respect to return of the $5.00 registration fee, Plaintiff "cannot demonstrate an injury sufficient to confer standing." *Nat'l Family Planning*, 468 F.3d at 831 (emphasis in original).

Plaintiff offers two reasons why his injury is not self-inflicted. Plaintiff first contends that the failure to seek a refund is justified because the "FAA failed to *actively notify* registrants of the availability of a refund." Pl.'s Opp'n at 16–17 (emphasis added). Plaintiff, however, misstates the law. The question is not whether the FAA did enough to affirmatively notify Plaintiff and others, but rather whether Plaintiff had "an easy means for alleviating" his harm that he did not pursue. *Nat'l Family Planning*, 468 F.3d at 831. He certainly did. In any event, Plaintiff nowhere

alleges that *he* did not know about the FAA's refund and information-deletion offer, and it is *his* standing that matters. *See generally* Am. Compl; Pl.'s Opp'n.

Next, Plaintiff argues that the process was overly burdensome because it required registrants claiming the refund to supply banking information. Pl.'s Opp'n. at 16–17. Courts, however, have never held that a readily available remedy must impose no burden to break the causal chain. *See Nat'l Family Planning*, 468 F.3d at 831 (holding that the plaintiff lacked standing where it could have asked the agency to clarify the plaintiff's responsibilities, but chose not to do so); *St. Louis Heart Ctr., Inc. v. Nomax, Inc.,* 899 F.3d 500, 504–05 (8th Cir. 2018) (holding that the plaintiff's injury was self-inflicted where the plaintiff could have used an "opt-out" form to stop unwanted faxes and did not do so); *Ellis v. Comm'r of IRS*, 67 F. Supp. 3d 325, 336 (D.D.C. 2014) (finding the plaintiff's harm self-inflicted where he could have filed a tax return and chose not to do so). Supplying bank account information to the FAA so that it could remit the registration fee hardly constitutes a significant burden.

3. *Redressability*

Having found both injury in fact and causation lacking, the court need not address the element of redressability. Before moving on, however, the court notes that in its previous decision it held that Plaintiff's claimed injury was not redressable because to do so would be "tantamount to an award of interest," which "cannot be recovered against the United States" absent a waiver of sovereign immunity. *Taylor*, 351 F. Supp. 3d at 105 (citing *Library of Congress v. Shaw*, 478 U.S. 310, 311 (1986)). Plaintiff now clarifies that he does not seek renumeration for the lost use of the fee; rather, he believes this lost time value of the $5.00 registration fee, in addition to the fee itself, constitutes "actual damages" that would entitle him to statutory damages of at least $1,000 under

9

the Privacy Act. *See* Pl.'s Opp'n. at 1, 12. The court therefore withdraws its prior analysis as to redressability.

B.      **Lack of Jurisdiction as to Counts III–V**

In addition to lack of standing, Defendants also contend that this court cannot hear Claims III through V—constitutional violation, unjust enrichment, and declaratory relief—because those claims effectively challenge the Registration Rule itself, and therefore exclusive jurisdiction rests with the D.C. Circuit. *See* Def.'s Mot. at 11. The court disagrees.

The D.C. Circuit has exclusive jurisdiction to review challenges to FAA "orders," such as the Registration Rule. 49 U.S.C. § 46110(a). Although Plaintiff does claim that "Defendants violated Plaintiff and the Class's Constitutional and privacy rights by unlawfully promulgating . . . and enforcing the Registration Rule," Am. Compl. ¶ 59, by that allegation, he is not contesting the validity of the Registration Rule then in effect. This claim was already made, and it prevailed in *Taylor v. Huerta*. 856 F.3d. at 1094. This case, by contrast, concerns efforts to recoup damages for alleged pecuniary harms arising from agency action. This court has jurisdiction over such claims. *Cf. Beins v. United States*, 695 F.2d 591, 598 (D.C. Cir. 1982) (holding that claim by pilot that FAA had negligently denied him airmen medical certificates under the Federal Tort Claims Act could be heard by the district court despite the agency's claim that exclusive jurisdiction rested with the D.C. Circuit).

C.      **Failure to State a Claim**

Defendants also move to dismiss each of Plaintiff's four claims for failure to state a claim. The court did not reach these arguments in its previous decision. Though it still finds Plaintiff lacks standing, for the sake of completeness the court addresses those arguments now. Evaluating

Plaintiff's Amended Complaint against the familiar standards under Rule 12(b)(6), the court finds that Plaintiff has not succeeded in stating a claim.

1.  *Privacy Act*

To state a claim under the Privacy Act, a plaintiff must allege that (1) the agency "intentionally or willfully" violated the Act's requirements; and (2) he sustained "actual damages" (3) "as a result of" the violation. *See OPM Breach Litig.*, 928 F.3d at 62 (citing 5 U.S.C. § 552a(g)(4)). Plaintiff's claim fails on, at least, the first and second elements and probably the third, as well.

a.  "Intentional or willful" violation

An "intentional or willful" violation of the Privacy Act requires more than "gross negligence." *See id.* at 62–63. Instead, in his case, Plaintiff must plead facts that would support the plausible inference that the FAA's collection of personal information from model aircraft owners was in "flagrant disregard of [their] rights under the [Privacy] Act," was put in place "without grounds for believing [it] to be lawful," or was "so patently egregious and unlawful that anyone undertaking the conduct should have known it unlawful." *See id.* at 63 (quoting *Maydak v. United States*, 630 F.3d 166, 179 (D.C. Cir. 2010)).

Plaintiff's pleading does not clear this hurdle. Plaintiff contends that the FAA's collection of model airplane owners' personal information without statutory authority violates the Privacy Act, because such information was not "relevant or necessary to a purpose required to be accomplished by statute. . . ." Am. Compl. ¶ 37 (citing 5 U.S.C. § 552a(e)(1)). To establish that the FAA intentionally or willfully violated this provision of the Act, Plaintiff relies heavily on the D.C. Circuit's ruling in *Taylor v. Huerta* and highlights the court's statement, "[s]tatutory interpretation does not get much simpler," when it rejected the agency's defense of its authority to

11

adopt the Registration Rule. *Huerta*, 856 F.3d at 1092. *See* Am. Compl. ¶ 45; Pl.'s Opp'n at 27–31. Plaintiff, however, cites no case in which an agency's mere misestimation of its own statutory authority to regulate was deemed sufficient to establish an intentional or willful violation of the Privacy Act. Courts frequently find agencies to have overstepped their statutory authority. Congress surely could not have intended for aggrieved parties to have recourse to the Privacy Act's statutory damages whenever an agency thinks it has more power than it actually does. Nor does the D.C. Circuit's turn of phrase help Plaintiff. The D.C. Circuit did not purport to make factual findings about the FAA's position. It simply rejected the agency's rationale for its authority to require registration of model aircraft. It would be a mistake to draw any inference about the agency's intent from the D.C. Circuit's legal conclusions.

Plaintiff also points to the fact that the FAA did not delete Plaintiff's personal information and refund him the registration fee after *Taylor v. Huerta*. *See* Am. Compl. ¶ 45. But, of course, the agency *did offer* to delete registrants' information and refund their registration fee—an opportunity the Plaintiff did not embrace. *See id.* ¶ 16. Plaintiff argues that taking this fact into account "is merely an attempt to shift the focus from its own wrongdoing and place the burden on those who suffered the consequence of the FAA's statutory violation." Pl.'s Opp'n at 31. But the "burden" to which Plaintiff refers was completing a one-page form that sought bank account information to process a refund. Such a procedural prerequisite hardly demonstrates the agency's "flagrant disregard" of model aircraft owners' rights under the Privacy Act. *White v. OPM*, 840 F.2d 85, 88 (D.C. Cir. 1988).

Finally, Plaintiff urges that "[i]t would be premature for the Court to make a factual determination as to the FAA's intent without the benefit of discovery." Pl.'s Opp'n at 31. Yet, the D.C. Circuit and district courts have not hesitated to dismiss Privacy Act claims when facts to

support the requisite intent are found to be lacking. *See White*, 840 F.2d at 88; *Scott v. Conley*, 937 F. Supp. 2d 60, 79–80 (D.D.C. 2013). This court does the same.

b. <u>Actual damages</u>

Plaintiff's Privacy Act claims fails for a second reason: he has not pleaded "actual damages." "The 'entitlement to recovery' necessary to qualify for the $1,000 minimum [under the Privacy Act] is not shown merely by an intentional or willful violation of the Act producing some adverse effect. The statute guarantees $1,000 only to plaintiffs who have suffered some actual damages." *Doe v. Chao*, 540 U.S. 614, 627 (2004). "Actual damages" as used in the Privacy Act refers only to "proven pecuniary or economic harm." *FAA v. Cooper*, 566 U.S. 284, 299 (2012).

Plaintiff did not suffer any such injury. Recall, he alleges two types of pecuniary harm: the loss of the $5.00 registration fee and the lost time value of that fee. As to the first claimed injury, Plaintiff has not incurred a $5.00 loss. An Act of Congress requires him to register his model aircraft and authorizes the FAA to assess a $5.00 fee. The FAA's retention of the $5.00 is therefore lawful. Neither does Plaintiff's claimed lost time value of the $5.00 qualify as "*proven* pecuniary or economic harm." *Id.* (emphasis added). Plaintiff does not allege that he would have invested the $5.00 registration fee had he not used it to pay the FAA. He therefore has not averred any "actual damages" from the FAA's improper collection of the fee. *See id.* at 295 (analogizing the Privacy Act's "actual damages" element to "special damages" for common-law torts of libel *per quod* and slander, "which must be specially pleaded and proved"), 303 (describing the Privacy Act as "a scheme that limits the Government's . . . liability to harm that can be substantiated by proof of tangible economic loss").[3]

---

[3] Reading "actual damages" to exclude the lost time value of money except where sufficiently pleaded is also consistent with the notion that "waivers of sovereign immunity must be strictly construed in favor of the Government . . ." *See Cooper*, 566 U.S. at 299 (limiting the ambiguous phrase "actual damages" to "proven pecuniary or economic harm").

13

### c. As a "result of" the violation

In addition, the court is unconvinced that Plaintiff's claimed pecuniary loss is the type of loss recoverable under the Privacy Act. The Privacy Act allows an individual whose rights under the Act have been violated to sue for "actual damages sustained by the individual *as a result of* the [violation], but in no case shall a person entitled to recovery receive less than . . . $1,000." 5 U.S.C. § 552a(g)(4)(A) (emphasis added). It is true that the FAA assessed a $5.00 fee when it required model airplane owners to register under the Rule. However, it is not clear whether the simultaneous request for a fee and for information means the alleged $5.00 loss came about "as a result" of the improper collection of information, i.e., the actual violation of the Privacy Act. Plaintiff cites no authority to support such a proposition. Indeed, case law suggests the statutory requirement of actual loss "as a result" of a violation refers to something else: the resultant costs of improper release of one's personal information. *See, e.g.*, *OPM Breach Litig*, 928 F.3d at 64–66 (finding that legal fees expended to close fraudulently opened accounts, the cost of credit repair services, unreimbursed charges for fraudulent purchases, delayed tax refunds, and time off from work to resolve credit problems qualify as "actual damages" under the Privacy Act); *see also Lugo v. U.S. Dep't of Justice*, 214 F. Supp. 3d 32, 41 (D.D.C. 2016) (no actual damages shown where plaintiff did not allege a "causal connection" between the defendant's security practices and any adverse effect on plaintiff). A showing of actual damages sustained "as a result of" the Privacy Act violation is required to unlock the government's waiver of sovereign immunity, and ambiguities in the scope of the waiver must be construed in favor of the sovereign. *See Cooper*, 566 U.S. at 289–91. For this reason as well, Plaintiff's claim falls short.

    2. *Little Tucker Act*

A plaintiff may make a claim for an "illegal exaction" under Little Tucker Act, 28 U.S.C. § 1346(a)(2), "for recovery of monies that the government has required to be paid contrary to law." *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1572 (Fed. Cir. 1996). "The Tucker Act provides jurisdiction to recover an illegal exaction by government officials when the exaction is based on an asserted statutory power." *Id.* at 1573. "An illegal exaction . . . exists only if money has been 'improperly exacted or retained' by the government." *Bank One, Michigan v. United States*, 62 Fed. Cl. 474, 480 (Fed. Cir. 2004) (citing *Casa de Cambio Comdiv v. United States*, 291 F.3d 1356, 1363 (Fed. Cir. 2002)).

Though perhaps he once was, Plaintiff is no longer the subject of an "illegal exaction." Such illegality was erased by Congress's reinstatement of the Registration Rule. To hold otherwise would result in a windfall for Plaintiff—the return of the $5.00 registration fee he is obligated to pay to register model aircraft. *Cf. Lawrence v. United States*, 69 Fed. Cl. 550, 556–57 (2006), *aff'd per curiam*, 206 Fed. App'x 993 (Fed. Cir. 2006) (finding that the withholding of portions of an employee's salary was not an "illegal exaction," where the employee owed the government money for an overpayment). Plaintiff tries to avoid this result by asserting, once more, that he is not required to pay the registration fee, because he has not operated his model aircraft since Congress reinstated the Registration Rule. *See* Pl.'s Opp'n at 35. But the Amended Complaint states the opposite: "Plaintiff is a Model Aircraft hobbyist who owns multiple Model Aircraft that *are used* exclusively for hobby or recreational purposes." Am. Compl. ¶ 10 (emphasis added). "Where a plaintiff blatantly changes his statement of the facts in order to respond to the defendant's motion to dismiss . . . and directly contradicts the facts set forth in his original complaint, a court is authorized to accept the facts described in the original complaint as true." *Golden v. Mgmt. &*

*Training Corp.*, 319 F. Supp. 3d 358, 372 (D.D.C. 2018) (cleaned up). The court does so here. Plaintiff therefore fails to state a Little Tucker Act claim.

        3.        *Constitutional Violation*

The D.C. Circuit's recent decision in *OPM Breach Litigation* forecloses Plaintiff's claimed constitutional violation. There, the plaintiffs asserted that the agency had violated a constitutional right to privacy by failing to protect their personal information from third-parties. *See OPM Breach Litig.*, 928 F.3d at 71. The D.C. Circuit observed that "neither we nor the Supreme Court has ever held that" an individual's interest in avoiding disclosure of personal matters "is a constitutional right." *Id.* at 72. The court further observed that "[b]oth courts have, so far, steadfastly rejected all informational privacy claims purporting to rest on the Constitution . . . ." *Id.* Ultimately, the court held that, "assuming (without deciding) the existence of a constitutional right to informational privacy, it affords relief only for intentional disclosures or their functional equivalent." *Id.* at 74 (citations omitted).

Here, Plaintiff alleges no "intentional disclosure" or "functional equivalent" by the FAA. Moreover, he cites no authority for the proposition that an agency's collection of personal information based on a mere misreading of its statutory authority gives rise to a constitutional violation. To be sure, the court in *OPM Breach Litigation* differentiated between the government's maintenance of personal information as employer, as opposed to as a sovereign power. *See id.* at 73. But that distinction aside, *OPM Breach Litigation* counsels strongly against recognition of a constitutional right of informational privacy so sweeping that it would protect citizens from the mistaken collection of basic personal information, such as a person's name, mailing address, and email address. Such information is a far cry from the type of intimate details as to which the court

16

in *OPM Breach Litigation* refused to recognize a right of informational privacy. Plaintiff therefore has failed to a state a constitutional violation.

### 4. *Unjust Enrichment*

At last, the court reaches Plaintiff's unjust enrichment claim. The elements of such claim are: "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." *In re APA Assessment Fee Litig.*, 766 F.3d 39, 45–46 (D.C. Cir. 2014) (quoting *News World Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1222 (D.C. 2005)). Here, even if Plaintiff's allegations satisfy the first and second elements, his claim falters on the third. As Defendants point out: "Even if the claimant has conferred a benefit that results in the unjust enrichment of the recipient when viewed in isolation, the recipient may defend by showing that some or all of the benefit conferred did not unjustly enrich the recipient when the challenged transaction is viewed in the context of the parties' further obligations to each other." Defs.' Mem. at 25 (quoting Restatement (Third) of Restitution and Unjust Enrichment § 62 (Am. Law Inst. 2011)). Plaintiff is now required by law to pay the $5.00 registration fee to operate model aircraft. The FAA's retention of the registration fee therefore is not "unjust."

Plaintiff argues that his claim for unjust enrichment still stands notwithstanding Congress's restoration of the Registration Rule, because that legislative act was "not retroactive." Pl.'s Opp'n at 37. This is true but misses the point. Congress specifically authorized the FAA to charge the very fee that Plaintiff claims "unjustly" enriched the agency. In such circumstances, there is nothing unjust about the agency retaining Plaintiff's fee payment.

Also, Plaintiff yet again insists that he has not operated model aircraft since Congress reinstated the Registration Rule and therefore is not required to pay the registration fee. *See id.* at 37. The court rejects that extra-pleading allegation for the same reason it did previously.

Finally, Plaintiff offers a one-sentence statement that Congress's reinstatement of the Registration Rule "violates the separation of powers." *Id*. Plaintiff directs the court to "Section I.A.4" to support his separation-of-powers argument. *Id.* The brief, however, contains no "Section I.A.4." Plaintiff does make a conclusory claim in footnote five on page 20 that Congress's restoration of the Registration Rule "was ineffectual, because it violated constitutional separation of powers." *Id.* at 20 n.5. The court need not entertain an undeveloped constitutional argument buried in a footnote. *See Bryant v. Gates*, 532 F.3d 888, 898 (D.C. Cir. 2008) (holding that argument made only in "single, conclusory statement" on appeal forfeited); *Hutchins v. Dist. of Columbia*, 188 F.3d 531, 539 n. 3 (D.C. Cir. 1999) (stating that the court "need not consider cursory arguments made only in a footnote").

## IV. CONCLUSION

For the foregoing reasons, the court grants Defendants' Motion to Dismiss, ECF No. 36, for lack of standing and for failure to state a claim. A separate final order accompanies this Memorandum Opinion.

Dated: August 9, 2019

Amit P. Mehta
United States District Court Judge